# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

GEORGE E. WILSON

Defendant.

CRIMINAL COMPLAINT

CASE NUMBER: 11-1953 SKG

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

George E. Wilson engaged in the theft and conversion of property of the United States government, knowing that the transactions were designed to conceal or disguise the nature and source of those proceeds by commingling the activities and proceeds with salary deposits, mortgage activities and proceeds in doing so, was able to purchase several vehicles and his residence.

I further state that I am a Special Agent with the Coast Guard Investigative Service (CGIS) and that this complaint is based upon the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part thereof: ☒ Yes  ☐ No

Christopher K. Huntington, Special Agent
Coast Guard Investigative Service

Sworn to before me and subscribed in my presence,

5/4/11 at 11:40 AM   at   Baltimore, Maryland
Date and Time Issued

Susan K. Gauvey
United States Magistrate Judge

# Affidavit in Support of Criminal Complaint and Search Warrants

## A. PURPOSES OF THE AFFIDAVIT

1. This Affidavit is submitted in support of an application for a criminal complaint for George E. WILSON the target of this investigation, a 49 year old civilian employee of the United States Coast Guard. He is married to Dandalyn J. WILSON, who is a civilian employee in the White House Communications Office, who is a retired US Army E-8.

2. This Affidavit is submitted in support of applications for search warrants for the following locations:

    a. 1829 Disney Estates, Severn, MD, 21144 (more fully described in **Attachment B** hereto).

    b. Safe Deposit Box 110062, PNC Bank, Reece Rd, Ft. Meade, MD.

3. I submit that there is probable cause to believe that contained in these locations is evidence of theft, conversion, and sale of property belonging to the United States in violation of 18 U.S.C. Section 641.

4. Your affiant submits that George E. WILSON engaged in the theft and conversion of property of the United States government, knowing that the transactions were designed to conceal or disguise the nature and source of those proceeds by commingling the activities and proceeds with salary deposits, mortgage activities and proceeds in doing so, was able to purchase several vehicles and his residence.

## II. AFFIANT

5. I, Christopher K. Huntington, am a Special Agent (S/A) with the Coast Guard Investigative Service (CGIS), with over two years of experience involving investigations pertaining to the purview of the United States Coast Guard. I have been an active duty member of the USCG for the over eleven years. I attended the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program and the Naval Criminal Investigative Service (NCIS) Special Agent Basic Training Program. As a S/A with CGIS, your affiant participated in numerous criminal and administrative investigations of individuals who are in violation of statutes relating to the laws of the United States, Codes of Federal Regulations, and Uniform Code of Military Justice.

6. I am currently assigned to the Washington Field Office (WFO), Arlington, Virginia, charged with investigating violations of federal law with regard to the USCG and violations of the Uniform Code of Military Justice. I have had specific training in the investigation of both financial crimes and theft and conversion of government property.

7. Based on my training and experiences, I know that people who steal and then sell the items often hold items at their residence, or keep some items for personal use. Particularly in the theft of government property, your affiant knows the following:

    a. Small electronic items can be stored within the residence.

    b. Small electronic items are often kept for personal use.

8. Based on training, experiences, and the assistance of others in this investigation, I know the following regarding investigations involving financial records, documents, and assets:

    a. When individuals involved in criminal activities accumulate large amounts of proceeds, they attempt to legitimize the money through investments in securities, stocks, bonds, mutual funds, interest bearing savings and checking accounts, letters of credit, money drafts, brokerage houses, real estate, shell corporations, business fronts and luxury vehicles.

    b. When individuals who are involved in criminal activities accumulate large amount of proceeds, they will maintain bulk cash within their residence, other properties, and safe deposit boxes.

    c. When individuals who are involved in criminal activities learn of a criminal investigation into their illegal activity, they attempt to conceal, liquidate, or transfer their moveable assets, especially vehicles and bank accounts, in order to prevent law enforcement authorities from seizing and forfeiting these assets.

### III. STATUTES INVOLVED

9. The following statutes are relevant to this application:

**18 U.S.C. Section 641. Public Money, Property or Records**:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.

### IV. AFFIANT'S BASIS FOR PROBABLE CAUSE

10. The information provided in this affidavit is based upon my personal knowledge and observations made during the course of this investigation; information conveyed to me by others, including law enforcement officials; my review of records, documents, and other

2

evidence obtained during this investigation; and information and files within the control of the USCG.

11. This affidavit contains information necessary to support probable cause for this application and does not contain every material fact that I have learned during the course of this investigation; however, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

## V. PROBABLE CAUSE RELATED TO THEFT AND CONVERSION OF U.S. PROPERTY

### USCG SURFACE FLEET LOGISTICS CENTER ("SFLC"), 2401 HAWKINS POINT RD, BALTIMORE, MD

12. The USCG SFLC provides the USCG surface fleet and other assigned assets with depot level maintenance, engineering, supply, logistics and information services to support USCG missions. Within the SFLC is the Asset Logistics Division (ALD), which serves as the fiscal, finance, supply and logistics expert for the entire command structure. Administering a multi-million dollar annual budget, ALD is responsible for the oversight and handling of all supply related accounts. ALD manages the surface fleet's Inventory Control Point (ICP) comprised of a primary warehouse located in Baltimore, MD, as well as numerous remote stock points, located throughout the United States.

13. The USCG SFLC warehouse is comprised of USCG active duty members and civilian personnel. The USCG stores replacement items, items sent for repair, and items sent for disposal within the warehouse. These items are sent to and from the surface fleet including all cutters and small boats throughout the USCG.

14. The USCG and certain other agencies have a shared system for disposing of items no longer needed for service, or considered over stock. USCG SFLC transfers ownership of these items, which include anything from electronic equipment circuit cards to life rafts taken from the sides of the USCG Cutters. The USCG SFLC transitions the ownership of these items to the Defense Logistics Agency's (DLA) Disposition Services, formerly known as the Defense Reutilization and Marketing Service (DRMS), which operates the Defense Reutilization and Marketing Offices (DRMO).

15. The DLA Disposition Services disposes of excess property received from the military services. The inventory changes daily and includes thousands of items: from air conditioners to vehicles, clothing to computers, and much more. That property is first offered for reutilization within the Department of Defense (DOD), transfer to other federal agencies, or donation to state and local governments and other qualified organizations. DLA Disposition Services manages the DOD surplus property sales program. Excess property that is not reutilized, transferred or donated may be sold to the public.

16.     The USCG SFLC employs Wage Grade civilian employees to transport the items from the SFLC warehouse to the DRMO located on the U.S. Army's Fort Meade, MD installation. Transports of the items are conducted every Tuesday, Wednesday, and Thursday, weather permitting. The transport of the items from USCG SFLC to the DRMO on Fort Meade is conducted using a government owned vehicle, a Chevrolet truck with a red cab and white enclosed cargo section, government license plate G82-0086H. Items too large or heavy for the government owned vehicle are transported via a contracted civilian company.

17.     From approximately 2002 to present Russell Lester and George E. WILSON were responsible for transporting items from the USCG SFLC to the DRMO Fort Meade. LESTER is the onsite supervisor for the section of the USCG SFLC warehouse where the items are stored for transfer to the DRMO Fort Meade. George E. WILSON is the designated driver, appointed by LESTER to transport the items from the USCG SFLC to the DRMO Fort Meade.

### ANA INSTRUMENTS, INC., 9008 WILL LOOP, KING GEORGE, VA

18.     ANA Instruments is a wholesaler of new and used electronic test and measurement equipment. ANA Instruments sells new, used and reconditioned oscilloscopes, analyzers, meters, counters, power supplies, and a multitude of other electronic and non-electronic related equipment. ANA Instruments purchases its merchandise from auctions, the DLA Disposition Services, and individual sellers.

19.     ANA Instruments is owned and operated by the brothers Alfred and Arthur LANDINO, who employ two laborers, Stephond R. OWENS and Justin A. MASON. Al and Arthur LANDINO travel throughout the Virginia, Maryland, and Delaware region to purchase items to sell through ANA Instruments, Inc. ANA Instruments Inc. is involved in selling items using the website eBay under the user name ANAINSTR. This account sells items throughout the United States and holds accounts with Paypal and eBay for selling in overseas markets.

### THE INVESTIGATION

20.     On October 22, 2009, your affiant received information that possible USCG property was being sold on eBay. Your affiant reviewed the eBay listing of a Sunair RT-9000 HF/SSB transceiver, posted on eBay by user ANAINSTR, later identified as Alfred LANDINO of ANA Instruments, King George, VA. The eBay listing provided pictures of the RT-9000 with a serviceability tag attached to it with the customer listed as the USCG. The Sunair RT-9000 HF/SSB transceiver is a fully synthesized ruggedized unit designed for data and voice applications. The transceiver is in service with the US Navy, US Air Force, US Coast Guard, US government agencies, and defense ministries and government agencies worldwide for shore-based, shipboard and transportable applications.

21.     On November 13, 2009, I interviewed Alfred LANDINO at ANA Instruments, King George, VA, regarding the Sunair RT-9000 transceiver he sold through eBay with the serviceability tag listing the USCG as the customer. Alfred LANDINO stated he knew he would

4

be approached by law enforcement agents regarding some of the items he purchased from George WILSON. He said he purchased the RT-9000 transceiver he sold on eBay from George WILSON. Alfred LANDINO said the RT-9000 transceiver had a serviceability tag dated January 2009, listing the USCG as the customer. The serviceability tag was more than likely placed on the transceiver by employees at the USCG SFLC during attempts to either repair or prepare the item for transport to the DRMO Fort Meade.

22. Alfred LANDINO showed your affiant a text message on his cell phone from phone number (443) 618-1167, which Alfred LANDINO stated belonged to George WILSON. It was later confirmed through USCG records that the phone number (443) 618-1167 was listed to George WILSON. Alfred LANDINO said he communicates with George WILSON primarily by text messages. The text message from George WILSON's phone number said he has 9 of the RT-900's (considered an error and is actually the RT-9000's) and they are stolen. Alfred LANDINO replied to the text message saying he would pass on purchasing the RT-9000's. The text message was about a separate group of RT-9000's George WILSON was attempting to sell to Alfred LANDINO. Alfred LANDINO said the RT-9000's already in his possession were purchased at an earlier date than the text messages. Alfred LANDINO said he did not want to purchase the RT-9000's mentioned in the text message because George WILSON said they were stolen.

23. Alfred LANDINO voluntarily showed your affiant his warehouse and identified items he purchased from George WILSON. Alfred LANDINO identified multiple piles of various types and styles of laptops with property stickers on them from agencies and entities such as Department of Homeland Security, USCG, Army Corps of Engineers, and Air National Guard. Another section of the warehouse had a table with digital cameras marked with government property stickers. Alfred LANDINO identified a stack of sealed boxes with flat screen computer monitors, a printer, and computer switches, which were unopened as purchased from George WILSON. Alfred LANDINO identified a box filled with sweat pants with USCG printed on the front. These are the same types of sweat pants found for sale within USCG Exchange stores, and also clothing items issued to new USCG recruits at boot camp in Cape May, NJ. Alfred LANDINO also identified a box of DGPS antennas and a box of cell phones. The DGPS antennas are items used on USCG small boats such as the 25 foot response boat. Alfred LANDINO said he purchased all of the above listed items from George WILSON.

24. Alfred LANDINO stated he purchases items from George WILSON approximately once a month, and did so from 2002 to 2006, and then from 2008 to November 2009. Alfred LANDINO did not say why he did not purchase items from George WILSON between 2006 and 2008. However our investigation revealed that George WILSON was employed at SFLC from 2002 to 2006 and then transferred employment to DRMO Fort Meade from 2006 to 2008. George WILSON left DRMO Fort Meade in 2008 and was employed by the USCG SFLC a second time and works at the USCG SFLC warehouse to this day. Senior management at the USCG SFLC stated George WILSON was re-hired partly due to his experience at the DRMO Fort Meade.

25. Alfred LANDINO stated he paid George WILSON approximately $10,000 per purchase during the above mentioned years. Alfred LANDINO said he paid George WILSON in cash and that he keeps no records of his payments to George WILSON. Alfred LANDINO said there are no receipts of purchase, ledgers including payments or items purchased, or receipts or bank statements identifying cash withdrawals made by Alfred LANDINO to pay George WILSON. At a later date in the investigation it was found that Alfred LANDINO paid George WILSON with a check once in 2005 and again in 2007. When George WILSON wanted to sell items to Alfred LANDINO they exchange text messages and then call occasionally using their cell phones. Alfred LANDINO said he and George WILSON do not e-mail or fax information to each other. George WILSON contacts Alfred LANDINO first to see if Alfred LANDINO is interested in purchasing the items he has in his possession.

26. Alfred LANDINO later stated he would meet George WILSON in the parking lot of the business ESI, 9100 Edgeworth Dr Ste A, Capitol Heights, MD. ESI is a business similar to ANA Instruments. LANDINO and WILSON would back their trucks to each other and with the help of OWENS and at times an unknown acquaintance of WILSON, would move boxes and pallets from the rear of WILSON's vehicle to the rear of the LANDINO's. This was confirmed by Stephond OWENS, who said he assisted in transferring items from the rear of a large box truck with a red cab, driven by George WILSON, to LANDINO's truck at ESI.

27. On December 10, 2009, your affiant interviewed witnesses from the company ESI in Capitol Heights, MD. Tolly NIKALS, an ESI employee, said he served in the US Air Force with Alfred LANDINO and met George WILSON through Alfred LANDINO. Tom MILTON, the CEO of ESI, said he knew who Alfred LANDINO was through association with NIKALS. MILTON agreed to allow Alfred LANDINO to meet with George WILSON in the parking lot in front of his business to transfer merchandise. MILTON said he did not know what the business of Alfred LANDINO and George WILSON entailed. The employees of ESI said they witnessed Alfred LANDINO and George WILSON back their trucks up to each other to transfer items in boxes from one truck to another. George WILSON would show up in a rental truck or a large box truck, similar in description to the government vehicle he uses to transfer items from the USCG SFLC to the DRMO Fort Meade. Alfred LANDINO would arrive at the meetings in his pick-up truck.

28. On November 20, 2009, your affiant interviewed Mike LEONARD, the division chief of the warehouse for SFLC and Beth BUNN, a sub division chief within the warehouse of SFLC. BUNN and LEONARD stated George WILSON is responsible for transporting items to the DRMO Fort Meade from the USCG SFLC. George WILSON uses one of two government vehicles to transport the items to DRMO Fort Meade, a 2006 Ford E350 cargo van, tag G43-2903B, VIN 1FCJE39L16HA19641, or a 2000 Chevrolet truck, tag G82-0086H, VIN 1GBJ6H1C7YJ506686.

29. Enterprise Rental records reflected a history of George WILSON renting Chevrolet E15C and E25C cargo vans on the following dates:

2006: January 13th and 27th; February 10th and 17th; March 10th and 17th; April 14th; May 5th, 12th, and 26th; June 16th and 30th; August 4th; September 20th, 27th, and 29th; and November 2nd, 21st, and 29th.

2007: January 4th, 10th, 18th, and 31st; April 4th; May 11th; and August 3rd and 14th.

30. The rental agreements, all signed by George WILSON, or with George WILSON as a second driver, were for one-day use, and to have the vehicle returned the following day. Statements from American Express Credit Card account 3723-796074-71008, belonging to George WILSON and 3723-796074-72006, also belonging to George WILSON, show payments made to Enterprise Rental in Jessup, MD, in relation to the dates listed in the rental car agreements. The driving distances recorded on the rental agreements and the approximate round trip distances between the rental location and known meeting locations of George WILSON and Alfred LANDINO are closely related.

31. George WILSON was working for the USCG during part of 2006 and then DRMO Fort Meade, which fall within the timeframes of him renting vehicles in 2006 and 2007. It is believed that George WILSON was using the rental trucks to transport materials taken from the USCG SFLC and DRMO Fort Meade to Alfred and Arthur LANDINO and possibly other buyers who have not been identified at this time.

32. SFLC supervisors confirmed that USCG personnel were never authorized to rent vehicles to transport equipment from SFLC to the Fort Meade DRMO. If the vehicles assigned to SFLC were not available a private company was and is hired to transport the items.

33. On April 22, 2010, Alfred LANDINO voluntarily surrendered 795 items he identified as purchased from George WILSON. The items recovered included: 157 laptops; 46 monitors; 7 life rafts; 174 cell phones and handhelds; 19 GPS and navigation equipment; 10 GPS antennas; 2 marine plotters; 3 radios; 4 remote control units; 31 items of camera equipment; 6 televisions; 296 items related to and including computers and network equipment; 3 printers; 2 depth finders; and 35 other miscellaneous items purchased from WILSON. A majority of the laptops, monitors, camera equipment, and computer equipment were marked with US government property stickers to include the USCG, US Army, Air National Guard, NSA, and Army Corps of Engineers. The laptops and computing systems have all had their internal hard drives and any other form of memory storage device removed, as would be found in items that had been de-militarized. The property stickers and de-militarized state of the property is consistent with items transferred to the DLA Disposition Service. Alfred LANDINO said that over the past several years he has sold on eBay large amounts of items that he purchased from George WILSON.

34. An effort was made to identify the values of the goods obtained from LANDINO. The total value of the items belonging to the USCG records totals approximately $94,500.

### SURVEILLANCE OF GEORGE WILSON

35. George WILSON was surveilled on March 5, 2011 conducting what is believed to be another theft of government property.

   A. At approximately 8:45 am, George WILSON arrived at DRMO Fort Meade driving the government owned vehicle mentioned above. At approximately 9:05 am, George WILSON departed DRMO Fort Meade and drove to the Hospital on the Fort Meade Army base. At approximately 10:00 am, George WILSON departed the hospital and drove the government owned vehicle to Sarah's House and parked the vehicle. George WILSON walked to the Nissan Z, license plate TUFF300, and drove it to a U-Haul facility.

   B. At approximately 10:17 am, George WILSON arrived at the U-Haul rental facility, 1480 Annapolis Road, Odenton, MD. At approximately 10:25 am, George WILSON departed the U-Haul facility in a white Cargo Van clearly marked as a U-Haul rental vehicle with an Arizona license plate.

   C. At approximately 11:15 am, George WILSON arrived at the General Service Administration Agency (GSA) National Capital building, 7th and D St SW, Washington, DC. George WILSON was granted access to the loading dock of the building by the guard on duty. A DHS-OIG agent later approached the guard who administered access to George WILSON. The guard stated that he recognized George WILSON and has seen him at that specific facility on multiple occasions. George WILSON used his USCG identification badge to gain access to the building, which was recorded on the guard's admittance log.

   D. George WILSON backed into the loading dock and waited in his vehicle. An unidentified male brought a cart containing approximately 5 boxes with identifying markings on them such as Dell. At approximately 11:30 am, George WILSON departed the GSA facility and drove to Hytec Exchange Computers, 8610 Washington Blvd. #104, Jessup, MD. Two unidentified black males exited the store and assisted George WILSON in unloading the boxes he received from the GSA facility. George WILSON departed the Hytec Exchange Computers and drove to the U-Haul facility. George WILSON returned to the government owned vehicle parked at Sarah's House and returned to the USCG SFLC.

   E. Your affiant confirmed with the USCG SFLC management that George WILSON does not have authorization or any official reason to pick up or deliver items to the GSA facility in Washington, DC, or that he is authorized to rent a vehicle for his official duties.

36. On March 6, 2011, your affiant approached the employees at the Hytec Exchange Computers store and was told that they purchase government surplus computers, and that they had purchased a shipment the day prior (March 5, 2011). The employees identified a new computer monitor, directly out of the manufacturer box, they obtained from their source. The employees stated they receive a shipment every Tuesday and Thursday.

37.	On March 6, 2011, your affiant received information from the U-Haul facility George WILSON rented the U-Haul Cargo Van from. George WILSON has rented U-Haul vehicles from that facility since December 2010 during weekdays when he would supposedly be at work.

## FINANCIAL

38.	Your affiant has reviewed numerous financial records pertaining to WILSON and his wife. The following summarizes said reviews:

A.	George WILSON receives a direct deposit for his federal salary in the Fort Meade Community Credit Union account 45937 Main Share Suffix 0, for $520, and in a PNC bank account number 55-1019-2535 for approximately $681. The deposits occur twice a month on the second and fourth Mondays, and are from George WILSON's salary.

B.	Dandalyn WILSON receives a direct deposit for her military retirement pay in the Fort Meade Community Credit Union account 45937 Share Draft Suffix 7 of $1,486.45. Dandalyn WILSON receives a direct deposit for her federal salary in the Fort Meade Community Credit Union account 45937 Share Draft Suffix 7 of approximately $2,000. Each deposit is made once a month.

C.	The approximate combined total salary and retirement incomes of George and Dandalyn WILSON is $5,888 a month.

39.	Your Affiant found that George WILSON and Dandalyn WILSON maintain multiple bank accounts with Fort Meade Community Credit Union, PNC Bank, Carrolton Bank, and Pentagon Federal Credit Union. Deposits of cash and checks not otherwise able to be accounted for as either salary or military retirement were made to the Fort Meade Community Credit Union, PNC Bank, and Carrolton Bank accounts of George WILSON and Dandalyn WILSON. It is believed that George WILSON did not deposit all the proceeds received for the sale of government property, and maintained some of the proceeds on himself, within his safe deposit box. Alfred LANDINO told your affiant that he paid George WILSON approximately $10,000 per month during their business interactions. After identifying a separate business accepting government property from George WILSON, it is believed that his financial income is even greater than what was admitted to by Alfred LANDINO. The Safety Deposit box was first identified in response to a grand jury subpoena request to PNC bank. A contract signed by George WILSON was maintained on file.

### SAFE DEPOSIT BOX 110062, PNC BANK, 2792 REECE RD, FT. MEADE, MD

40.	On December 2, 2005, George WILSON revised his lease of safe deposit box 110062 at the Citizens National Bank, Laurel, MD. Records do not indicate when WILSON originally obtained the safe deposit box, but he necessarily must have obtained it before December 2005, as that is the date he revised an already existing lease. George WILSON,

9



Dandalyn WILSON, and Antoine G. WILSON are listed as persons on the lease. The rental agreement for this lease is maintained with the PNC Bank located on base at Fort Meade, MD, and was verified to still be under contract to George WILSON as recently as December 9, 2010.

41. On July 6, 2004, George WILSON told a bank employee at Carrolton Bank, 344 North Charles St, Baltimore, MD, that the $11,000 in cash he presented came from a safe deposit box that he maintained at Fort Meade Army base – the same location as the safe deposit box described in the preceding paragraph.

### FORT MEADE COMMUNITY CREDIT UNION ACCOUNT NUMBER 45937 SUFFIXES 0 AND 7

42. Analysis of the Fort Meade Community Credit Union account number 45937 Suffixes 0 and 7, belonging to George WILSON and Dandalyn WILSON, revealed differences between the total non-salary cash deposits and the salary deposits in this account to be approximately $49,100 in 2009. The same analysis revealed the difference for 2008 to be approximately $23,000 in cash deposits; for 2007, approximately $40,800 in cash deposits; and for 2006, approximately $24,400 in cash deposits. On February 4, 2009, $50,000 was withdrawn from the suffix 0 of this account and then placed into a Certificate of Deposit (CD) at the Fort Meade Community Credit Union, account 45937-3402. Analysis of the Fort Meade Community Credit Union account number 45937 suffix 7 shows that it is used to make payments on the mortgage for the residence of 1829 Disney Estate Dr, Severn, MD.

### PNC BANK ACCOUNT NUMBERS 55-1019-2535 AND 55-1053-3926

43. Analysis of the PNC Bank account numbers 55-1019-2535 and 55-1053-3926, belonging to George WILSON and Dandalyn WILSON, revealed deposits that could not otherwise be accounted for through salary or retirement benefits. On August 27, 2007, a non-salary deposit of $3,400 was made to account 55-1019-2535. On March 31, 2009, George WILSON deposited $10,000 in cash to account 55-1019-2535, and then another $10,000 cash to account 55-1053-3926. On January 23, 2010, Dandalyn WILSON withdrew $25,050 in from account 55-1053-3926.

### CARROLTON BANK ACCOUNT NUMBERS 565173968 AND 578027948

44. Between July 6, 2004 and February 21, 2006, a total of $97,800 in cash deposits were made to the WILSON's Carrolton Bank account number 565173968. The deposits range from $2,000 to $10,000. $10,000 is the amount Alfred LANDINO said he typically paid WILSON for items taken from the USCG SFLC warehouse and DRMO Fort Meade.

45. George WILSON deposited to the Carrolton Bank account number 565173968, two checks originating from ANA Instruments. The checks from ANA Instruments were negotiated on November 14, 2005, in the amount of $1,300, and on January 11, 2007 in the amount of $7,200.



46. On June 13, 2005, a withdrawal of $70,000 was made from account 565173968 and then deposited to Carrolton Bank money market account 578027948, belonging to George WILSON and Dandalyn WILSON. On July 6, 2006, $14,752 was transferred from account 565173968 to the money market account 578027948. Following the two large transfers to the money market account number 578027948, the following cash deposits into the money market account were made that were not otherwise able to be accounted for:

>January 15, 2005, $1,000
>March 29, 2006, $2,000
>April 18, 2006, $2,000
>April 26, 2006, $2,000
>May 11, 2006, $2,000
>May 18, 2006, $1,050

### 2004 BMW 5 SERIES, VEHICLE IDENTIFICATION NUMBER WBANB33584B111492

47. On April 24, 2004, George WILSON and Dandalyn WILSON made a $35,000 cash down payment for a 2004 BMW 5 Series, vehicle identification number WBANB33584B111492, from Passport BMW in Marlow Heights, MD. A review of the WILSON's financial records available did not show a $35,000 cash withdrawal at the time of the vehicle purchase. They financed the balance of $27,062.50 through Capital One Auto Finance, account number 2731613, in the name of Dandalyn WILSON. The loan was paid in full as of May 28, 2007.

## VI. CONCLUSION

48. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that George WILSON has violated Title 18, United States Code, Section 641, and that George WILSON maintains evidence of this offense inside of the premises and the safe deposit box described herein.

49. Given the frequency that George WILSON sold property belonging to the U.S. Coast Guard and other governmental agencies and entities, your affiant believes that evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 641, listed in attachment A to this Affidavit, which is incorporated herein by reference, are concealed at the premises, located at 1829 Disney Estates Cir, Severn, MD (photograph of displayed in Attachment B), and safe deposit box 110062 located at (bank and address to identified in Attachment C). Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachments A, B, C.

Christopher R. Huntington, Special Agent
Coast Guard Investigative Service
Washington Field Office

Sworn and subscribed before me
This  4  day of May, 2011

Susan K. Gauvey
United States Magistrate Judge

## ATTACHMENT A

1. Items belonging to or originating from the USCG, DLA Disposition Service, and other governmental agencies and departments, including but not limited to laptops, computers, monitors, printers, marine electronic equipment, electronic support equipment, electronic testing equipment, circuit card assemblies, radios, transceivers, cell phones, digital cameras, etc.

2. USCG property originating from a USCG unit to include but not limited to life rafts, USCG clothing, etc.

3. Currency in the form of any denomination to include but not limited to, printed money, coins, checks, money orders, etc.

4. Financial receipts to include but not limited to bank deposit and withdrawal slips, ATM receipts, purchase receipts identifiable to American Express credit card account 3723-796074-72006, purchase receipts identifiable to FIA credit card 5329003141003589, etc.

5. Cell phones, PDA's, and other communication devices capable of sending and receiving text messages and online communications.

JSH

## ATTACHMENT B

The Residence is located at 1829 Disney Estates Circle, Severn, MD, within an enclosed community clearly marked by a red brick entrance sign "Disney Estates." The residence is identified as 1829 on the mailbox located directly in front of the residence. The mailbox is black atop a white post. The front of the residence is described as if looking at it from the front. It is a two story building with beige vinyl siding and white trim. The garage is to the left with a large white trimmed A frame. There are two white garage doors that roll upward into the garage. A white circular vent is located at the apex of the garage. Leading to the main entrance are four steps. The porch section of the main entrance is encompassed by a white rail with four vertical white wooden pillars. The porch is enclosed to only the front portion of the residence. The entrance to the residence is at the center of the building. The main entrance has two doors atop each other, one is a glass outer door, with a blue solid door directly behind it. The main entrance is outlined by white wood trim with vertical rectangular windows lining both sides. To the left of the entrance is a square window with wood trim and blue shutters. To the right of the main entrance are two windows that stretch from the first floor ceiling to approximately two feet from the floor. The windows have white wood trim with blue shutters. The second floor has four windows with white wooden trim and blue shutters. The center of the residence is identified with an A frame. On the right side of the building there is a small window leading to a basement. There are no other windows or doors on the right side of the building. Behind the residence is a driveway leading to a separate residence.

JSH

## ATTACHMENT C

One Safety Deposit Box #110062 located at PNC Bank, 2792 Reese Rd., Ft. Meade, Maryland.